UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BOARD OF TRUSTEES OF THE
CHRISTIAN SCHOOL PENSION TRUST
FUND,

        Plaintiff,

v.

WEST SAYVILLE CHRISTIAN SCHOOL,

        Defendant.

No.

Hon.

## COMPLAINT

Plaintiff Board of Trustees of the Christian Schools Pension Trust Fund (the "Trust Fund") states its complaint against Defendant West Sayville Christian School ("WSCS") as follows:

### THE PARTIES

1. The Trust Fund, through an Agreement and Declaration of Trust restated effective September 1, 1996, and as subsequently amended (the "Trust Agreement"), holds in trust investment assets that are used to fund benefits for the Christian School Pension Plan ("Plan"). A copy of the Plan is attached as Exhibit A.

2. The Trust Fund acts through Plaintiff, the Board of Trustees of the Trust Fund. Plaintiff serves as trustee of the Trust Fund as the named fiduciary and Plan Administrator of the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended.

3. Plaintiff's principal office and place of records of the Plan and Trust Fund is located at 2969 Prairie Street, Suite 102, Grandville, Michigan 49418.

4. Defendant WSCS is a nonprofit corporation with its principal place of business located at 37 Rollstone Avenue, West Sayville, NY 11796 and, on information and belief, is

incorporated in the state of New York.

5. Defendant has been a Participating Employer in the Plan.

## JURISDICTION AND VENUE

6. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) because this controversy presents a federal question and exclusively arises under federal law, specifically, ERISA.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district, and the lead plan sponsor and plan administrator are located in this district.

8. Venue is independently proper because WSC knowingly and voluntarily consented to jurisdiction and venue in the State of Michigan through a written agreement between the parties, specifically, the Plan. (Ex. A, Art. 8.11(c).)

9. This Court has personal jurisdiction over WSC because WSC knowingly and voluntarily consented to personal jurisdiction in the State of Michigan pursuant to a valid forum selection clause. (*Id*.)

## FACTUAL BACKGROUND

10. Christian Schools International ("CSI") is a Michigan nonprofit organization that provides services to support its member schools and Christian education, including the pension benefits provided to member employees under the Plan.

11. The Plan is sponsored by CSI and adopted by participating employers who are members of CSI ("Participating Employers"). The Plan is administered by Plaintiff, with Plan assets held in the Trust Fund and managed by Plaintiff and its investment manager.

12. The Plan was established by a bona fide group of employers as a multiple employer

defined benefit pension plan under ERISA for the purpose of providing retirement benefits to eligible employees and beneficiaries, and it is maintained as a tax-qualified retirement plan under Section 401(a) of the Internal Revenue Code of 1986, as amended.

13. The Trust Fund was established by CSI as the funding vehicle for the Plan. Under the Plan and Trust Agreement, Plaintiff has the duty to collect contributions and other amounts due and owing from the Participating Employers under the Plan and deposit them into the Trust Fund.

14. Plaintiff holds, invests, and distributes the assets of the Trust Fund for the exclusive purpose of paying Plan benefits to participants and beneficiaries in accordance with the terms and conditions of the Plan and the Trust Agreement.

15. WSCS adopted the Plan as a Participating Employer effective September 1, 1976. (Ex. B.)

16. WSCS agreed to make regularly and timely contributions in amounts required for providing pension benefits, its eligible employees became participants accruing benefits under the Plan, and it remitted payments to the Plan regularly through July 2026. (Ex. A, Art. 1.1(b); Ex. B.)

17. As a Participating Employer, WSCS had obligations under the Plan, including without limitation continuing to timely remit monthly required employer contributions and other amounts due under the Plan, providing financial information requested by the Trustees or CSI, "payment of withdrawal liability, including any required interest, upon the Participating Employer's voluntary or involuntary termination as a Participating Employer," and providing any additional information the Plan's Administrator deems necessary to administer the Plan, including notifying Plaintiff that the Participating Employer is ceasing operations and Plan contributions. (Ex. A, Art. 8.12(b), (f), (g), (h).)

18. Article 11 of the Plan and its various subsections govern the termination of a Participating Employer's status as a Participating Employer under the Plan. (*Id*. at Art. 11.)

19. Under the Plan, a Participating Employer's participation in the Plan automatically terminates "upon the legal dissolution of the Participating Employer, or upon a cessation of business operations . . . ." (*Id.* at Art. 11.3.)

20. In the event a Participating Employer's participation in the Plan terminates, it is liable for payment of its employer contributions invoiced on a monthly basis until it has paid all amounts due and owing under the Plan and withdrawal liability, which ensures, among other things, that the Trust Fund receives assets from the withdrawing Participating Employer that can be invested and otherwise contributed to fund benefit payments to employees of Participating Employers in the Plan, including those of the withdrawing Participating Employer. (*Id*. at Art. 11.2(a).)

21. The amount of the withdrawal liability is calculated according to the Plan terms using the unfunded benefit liability determined by the Plan's actuary. (*Id.* at 11.2.)

22. On August 11, 2025, when updating enrollment numbers for its Participating Employers for the 2025-2026 academic year, Plaintiff became aware that WSCS had voted to close before the start of the next academic year and was winding down its operations with the intent of no longer operating.

23. On August 11, 2025, CSI contacted WSCS to confirm that it would no longer be offering classes for the upcoming school year, and notified Plaintiff.

24. On August 12, 2025, WSCS—through its treasurer, Jean Vignato—confirmed to CSI that operations were winding down and acknowledged WSCS's liability for Plan payments on behalf of WSCS.

25. On August 22, 2025, in accordance with the Plan, Plaintiff sent WSCS a notice of its withdrawal liability assessment letter ("Withdrawal Assessment Letter"), which was in the amount of $193,871.51. A copy of the Withdrawal Assessment Letter is attached as Exhibit C.

26. The Board also informed WSCS that in accordance with the Plan, WSCS would be liable for interest if it failed to pay the withdrawal liability in full by October 11, 2025, and would be liable to continue making monthly employer contributions until such payment was made in full. (*Id.*)

27. WSCS failed to pay any amount of the withdrawal liability as required under the Plan or any further monthly contributions, and after providing some limited requested financial information, ceased all communications with Plaintiff despite Plaintiff's multiple follow-ups.

28. To discharge its fiduciary obligations under the Plan and Trust Agreement, Plaintiff filed the present lawsuit to collect payment of the unpaid withdrawal liability due and owing from WSCS, related interest and all amounts due and owing to the Plan, including monthly contributions and interest.

**COUNT I**
**(Recovery of Unpaid Withdrawal Liability under the Plan**
**and ERISA §§ 502(a)(2)-(3)); 29 U.S.C. §§ 1132(a)(2)-(3))**

29. CSI incorporates by reference all preceding paragraphs.

30. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a fiduciary to bring a claim for breach of fiduciary duty, including without limitation for any violation of any plan term by a plan participant and not timely remitting amounts due and owing to the Plan.

31. ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a fiduciary of an employee benefit plan to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable

5

relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

32. Plaintiff is a fiduciary and the plan administrator of the Plan within the meaning of ERISA.

33. As a Participating Employer under the Plan and a contributing sponsor of the Plan as defined under ERISA Section 4001(a)(13), 29 U.S.C. § 1301(a)(13), WSCS agreed to be bound by the provisions of the Plan, including the requirement to fund the plan through regular contributions and withdrawal liability assessed under Section 11.2.

34. Under the Plan, WSCS is obligated to pay withdrawal liability and all amounts due in the event its participation in the Plan terminates.

35. WSCS's participation in the Plan terminated under Section 11.2 of the Plan as of August 12, 2025, in connection with its vote to cease operations and notice to Plaintiff as documented in the withdrawal liability assessment dated August 20, 2025.

36. Upon termination, WSCS became liable for withdrawal liability in the amount of $193,871.51, as assessed by the Trustees.

37. Withdrawal liability is assessed to the Terminating Employer on the termination date and is immediately due in its entirety.

38. The full amount of withdrawal liability is due on the termination date and is considered an asset of the Trust Fund as of that date.

39. WSCS has failed to pay its withdrawal liability of $193,871.51, in violation and breach of the terms of the Plan.

40. Interest is assessed on any unpaid withdrawal liability in accordance with the Plan

and Internal Revenue Code Section 6601.

41.    Plaintiff, as fiduciary of the Plan, is entitled to enforce the terms of the Plan and collect the withdrawal liability WSCS owes.

42.    As a result of WSCS's failure to pay the monthly amounts due under the Plan and its withdrawal liability under the Plan, Plaintiff is entitled to appropriate monetary and equitable relief under ERISA §§ 502(a)(2)-(3) to enforce the terms of the Plan, including recovery of the unpaid monthly contributions and withdrawal liability amount from WSCS, interest, and attorneys' fees and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment against Defendant WSCS as follows:

A.    Entry of judgment in favor of Plaintiff and against Defendant in the amount of $193,871.51 as withdrawal liability owed under the Plan;

B.    Pre-judgment and post-judgment interest on the unpaid withdrawal liability in accordance with Internal Revenue Code Section 6601 or as otherwise provided by law;

C.    Reasonable attorneys' fees and costs incurred in this action; and

D.    Such other and further relief as the Court deems just and proper.

Respectfully submitted.

Dated: March 4, 2026

R. Michael Azzi (P74508)
Samuel D. Hauke (P88134)
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000
mazzi@wnj.com
shauke@wnj.com
***Attorneys for Plaintiff***